**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

             **Case No. 10-CR-360-A**

       -vs-         **Attorney Affidavit**

RICO J. VENDETTI, ARLENE COMBS,
DONALD GRIFFIN, and ALBERT
PARSONS, et al.

        *Defendant.*

STATE OF NEW YORK   )
COUNTY OF MONROE   ) ss.:

    Matthew R. Lembke, being duly sworn, deposes and says that:

    1.  I am an attorney duly admitted to practice in the United States District Court for the Western District of New York. I represent the defendant Rico J. Vendetti [Vendetti]. I make this application on behalf of Vendetti, as well as on behalf of Vendetti's co-defendants, Donald Griffin, Albert Parsons, and Arlene Combs [collectively referred to as the defendants], in support of the defendants' joint motion for an order permitting service of a subpoena *duces tecum* pursuant to Rule 17(c).

    2.  I have corresponded with Mr. Greenman [on behalf of Donald Griffin], Mr. Convissar [on behalf of Mr. Parsons], and Mr. Rarick [on behalf of Ms. Combs]. Each of them have reviewed these motions papers. And each of them has expressly requested that their clients be included in this motion and the relief requested.

3.     Specifically, we request that the Court grant an order permitting us to serve a subpoena *duces tecum* on David Stahl, M.D., Middleport, NY 14105 requiring Dr. Stahl to produce to the Court all medical records for Dr. Stahl's former patient, Homer E. Marciniak [Marciniak].

## LEGAL STANDARD FOR ISSUANCE OF "SO-ORDERED" SUBPOENA UNDER RULE 17(c)

4.     Fed.Rule.Crim.P. 17(c) permits the production of designated items in court "before trial or before they are to be offered in evidence."

5.     When the items arrive "the Court may permit the parties and their attorneys to inspect all or part of them."

6.     In order for a Court to issue a so-ordered subpoena, "the moving party must show:  (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition'."[1]

## MARCINIAK'S MEDICAL RECORDS ARE EVIDENTIARY AND RELEVANT

7.     As the Court is aware, among the most important aspects of this case is whether the prosecution will be able to prove, beyond a reasonable doubt, whether the burglary of Marciniak's home and the alleged assault of Marciniak contributed to his death, which occurred ten hours after the burglary.

---

[1] *United States v. Nixon*, 418 U.S.683, 699-700 (1974)

8.      According to the report of the Monroe County Medical Examiner, Marciniak's "cause of death" was acute myocardial infarction.[2]

9.      The autopsy report shows that Marciniak had severe heart disease.[3] A note from Dr. Stahl, dated July 5, 2010 [the date of the burglary and Marciniak's death] are part of the medical records from the Medina Hospital we have received. This note indicates unequivocally that Marciniak has had a history of coronary artery disease dating back several years.  This medical history includes a "heart attack" with a "myocardial rupture" requiring "bypass surgery and suturing of his ventricle several years ago."[4]  Marciniak also has a history of diabetes and previously had hypertension.[5]  Dr. Stahl's report of July 5, 2010, also states that Marciniak had "been getting short of breath quite a bit recently, coming to the office when the injection fraction was noted."[6]

10.     As I have indicated a number of times before the Court, there is little doubt that the cause of Marciniak's death will be litigated at trial.

11.     Marciniak's past medical history – especially his past medical history as it relates to his heart disease – is relevant.  And his past medical records are evidentiary in nature and will be admissible at trial to prove Marciniak's medical history.

---

[2] Exhibit A
[3] Exhibit A and B
[4] Exhibit C
[5] Exhibit C
[6] Exhibit C

## MARCINIAK'S MEDICAL RECORDS NOT OTHERWISE PROCURABLE IN ADVANCE OF TRIAL

12.     Absent a subpoena issued by the Court, and absent cooperation by the prosecutor, we are unaware of any way that we would be able to procure Marciniak's medical records.

## MARCINIAK'S MEDICAL RECORDS ARE NECESSARY FOR TRIAL PREPARATION AND WILL LIKELY CAUSE A DELAY IN TRIAL IF NOT PRODUCED BEFORE TRIAL

13.     As the Court can imagine, as part of our preparation for trial, each of the defendants joining in this motion have already consulted or retained, or intend to consult or retain, an expert witness on the issue of the cause of Marciniak's death.  The experts with whom I have spoken have indicated that, in order to properly analyze this case and render an opinion, it is necessary to have all records relating to Marciniak's past medical history – especially records relating to his heart disease.

14.     If we are not able to obtain these records now, our experts will be unable to properly analyze this case and assist the defendants in the preparation of their defenses.  Stated another way, if we are unable to obtain these documents until the time of trial, we will likely be forced to ask the Court for a continuance so that the defense, including investigators and expert witnesses, will be able to examine the records and properly incorporate them into their respective defenses.

15.     The records requested are not privileged because federal law does not recognize a physician-patient privilege.[7]

## THIS APPLICATION IS MADE IN GOOD FAITH

16.     I hereby certify that this application is made in good faith and is not intended as a general "fishing expedition."

17.     In this regard, I should note that I have made numerous requests of the prosecution to provide us with Marciniak's medical records from Dr. Stahl's office.  At least one of these requests was made before Your Honor in open court.  In response, the prosecutor has indicated repeatedly that he does not have these records, and has been unable to obtain them.

18.     I should also note that, in the Monroe County Medical Examiner's Report of Investigation, Dr. Stahl is identified as Marciniak's primary care physician.[8]

19.     The Monroe County Medical Examiner's Office also indicated in their report that they had requested, and received, Marciniak's medical records and medication list from Dr. Stahl's office.[9]

20.     Despite this, these documents were not turned over to the defense by the government.

---

[7] *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977).  See also, *United States v. Bek*, 493 F.3d 790, 801-02 (7th Cir. 2007); *United States v. Mullings*, 346 F.2d 173, 176 n.3 (2d Cir. 1966)
[8] Exhibit D
[9] Exhibit E

### RESERVATION OF RIGHTS TO MOVE FOR ADDITIONAL
### SUBPOENAS *DUCES TECUM*

21.     As mentioned above, based upon the records we have received [including the references to the records attached to this motion] it appears that Dr. Stahl was Marciniak's "primary care physician." It is reasonable to conclude that Marciniak was also under the care and treatment of a cardiologist related to Marciniak's heart disease.

22.     We fully expect that the medical records from Dr. Stahl's office will contain information about the names of any cardiologists who treated Marciniak.

23.     If this is the case then we intend to move the Court for subpoenas for the production of records from those physicians also.

24.     Accordingly, it is respectfully requested that the defendants' rights to make application for additional subpoenas *duces tecum* be reserved in the event that such other information is revealed as a result of our review of Dr. Stahl's records.

### CONCLUSION

25.     Based on the foregoing, it is respectfully requested that the Court issue and order permitting the defendants to obtain and serve a "so-ordered" subpoena for service on David Stahl, M.D. for the production of all medical records in Dr. Stahl's possession relating to Homer Marciniak; and that such records be subpoenaed and returnable to the Court; and that the parties be permitted to review and inspect such documents; and for such other and further relief as may be just and proper.

26.     We have prepared a proposed order for the Court's review.[10]


WHEREFORE, it is requested that the Court issue an order granting the relief sought herein, together with such other, further and different relief, as to the Court may seem just and proper.

MATTHEW R. LEMBKE

Sworn to before me this
8th day of June, 2012.

**GWEN E. WHITE**
**NOTARY PUBLIC, State of New York**
Registration # 01WH6149383
Qualified in Monroe County
Commission Expires 7 10. 2014

---

[10] Exhibit F

7

**EXHIBIT** _A_



**Office of the Medical Examiner**
**Monroe County**
**New York**

**CASE SUMMARY**
REPORT
**Case Number:** 10-01486
**Pathologist:** Scott F. LaPoint, MD
**Pronounced:** Jul 5 2010 2:24PM
Other County Case
**County/Origin:** Orleans Co.

**Name:** Homer E. Marciniak
**Manner of Death:** Undetermined
**Cause of Death:** Acute myocardial infarction

**Date of Birth:** ▮▮▮▮
**Age:** 77 Years

### FINAL FINDINGS

I.    Atherosclerotic and hypertensive cardiovascular disease.
  A.    Clinical laboratory evidence of acute myocardial infarct.
  B.    Complete occlusion of native RCA and circumflex arteries.
  C.    Status Post:  multiple vessel bypass graft.
    a.  graft to RCA distribution has 70% stenosis.
    b.  grafts to circumflex and LAD distributions completely occluded.
  D.    Cardiomegaly (750 grams).
  E.    Multiple remote myocardial infarcts.
  F.    Moderate mitral valve sclerosis, with calcifications.
  G.    Aortic atherosclerosis, severe.
  H.    Arteriolonephrosclerosis.
  I.    Lacunar cerebral infarct, left basal ganglia.

II.    Minor blunt force trauma of face, scalp, neck, back and extremities.

State of New York
County of Monroe    } ss.

On the 24 day of May in the year 2011
before me the undersigned, a Notary Public, in and for the said state,
personally appeared _Scott LaPoint_ personally
known to me or who's name is subscribed to the within instrument
and acknowledged to me that he / she executed the same in his / her
capacity, and that by his / her signature on the instrument, the
individual executed the instrument.

_Scott F. LaPoint, M.D._ 5/14/11
Scott F. LaPoint, M.D.
Deputy Medical Examiner

Pursuant to CPL Sections 190.60-8 and 190.30-2
I certify that this is a true copy of an examination
performed by me.

_(signature)_
Deputy Medical Examiner
_(title)_

_Signature of Notary_

Number of Pages

JULIE ANN LUEDKE
Notary Public, State of New York
License No. 4848301
Qualified in Monroe County
My Commission Expires Mar. 30, 20__

1 of 1    8|12|11

**EXHIBIT** _B_

**Office of the Medical Examiner**
**Monroe County**
**New York**



**AUTOPSY**
REPORT
**Case Number:** 10-01486
**Pathologist:** Scott F. LaPoint, MD
Other County Case
**County/Origin:** Orleans Co.

5.    There is a 3 cm area of purple to red ecchymosis present on the dorsal aspect of the right hand.  It is unclear if this represents physical trauma or perhaps prior intravenous site.
6.    There is a 2 cm area of abrasion present on the right mid back.
7.    There is a 1 cm area of abrasion present on the medial superior right scalp.
8.    There is a 2.5 cm purple contusion present on the posterolateral right scalp.

**INTERNAL EXAMINATION:** The body is opened using the standard Y-shaped incision to reveal dense fibrous adhesions encasing the pericardium.  There are also scant adhesions seen within the pleural surfaces, predominantly anterior.

**CARDIOVASCULAR SYSTEM:** The heart weighs 750 grams.  Examination of the coronary artery system reveals complete occlusion of the native right coronary artery and circumflex coronary arteries.  The left anterior descending coronary artery has a focal area of 85% stenosis.  On the internal anterior/right surface of the aortic root, there are three graft vessel orifices.  These are laid out in a triangle in relation to each other.  The more inferior opening has a graft vessel which extends into the lateral right ventricle and posterior septum region.  This shows extensive calcifications throughout its length and is approximately 70% stenotic.  The two more superior graft orifices are completely occluded.  The more right sided superior is completely occluded at its origin.  The left superior orifice extends for a distance of approximately 1 cm after which there appears to be acute occlusion by thrombus.  It is unclear where the superior grafts lead to but one extends apparently into the circumflex distribution region while the other appears to bypass at the very least the left main coronary artery, although due to the prominent adhesions and difficulty in removal much of this graft vessel is lost.  Sectioning through the myocardium reveals extensive areas of scarring involving much of the left ventricle free wall.  In addition, there are multifocal areas of scarring in additional locations.  The septum is quite prominently mottled and variegated in color.  The left ventricle free wall is markedly dilated, and ranges from 0.7 up to 0.14 cm in maximal thickness.  The right ventricle is a relatively uniform 0.4 cm in thickness.  Dissection along lines of flow reveals a moderate degree of calcified thickening of the mitral valve.  The aortic valve has only mild thickening.  The foramen ovale is closed.  The aorta has severe calcified atherosclerotic change beginning at the arch and extending distally becoming more severe over the course.

**RESPIRATORY SYSTEM:** The right lung weighs 640 grams.  The left lung weighs 580 grams.  The pleural surfaces are smooth, with moderate reticular anthracotic pigment deposition.  Dissection of bilateral bronchial trees reveals no significant luminal material.  Dissection of bilateral pulmonary arterial trees reveals mild intimal atherosclerosis but no emboli.  Sectioning through both lungs reveals homogenous spongy maroon parenchyma with no focal visible or palpable lesions.  Firm pressure causes only a very small amount of blood tinged foamy material to exude from the cut surfaces.

**HEPATOBILIARY SYSTEM:** The liver weighs 1700 grams.  The capsular surface is smooth, glistening and unremarkable.  The gallbladder is present and is unremarkable containing approximately 10 cc of dark green viscous bile.

**LYMPHORETICULAR SYSTEM:** The spleen weighs 290 grams.  The capsular surface is blue-gray and intact.  Sectioning reveals homogenous firm maroon parenchyma with abundant white pulp.  Lymph nodes throughout the body are not noticeably enlarged.

**GENITOURINARY SYSTEM:** The kidneys are approximately equal in size and together weigh 490 grams.  The capsular surfaces are moderately granular.  The right kidney appears to have duplicated collecting systems, with the calyces extending into distinct pelves, with fusion approximately 2 cm from the hilum of the kidney itself.  The cut surfaces otherwise are unremarkable, with distinct corticomedullary junctions.  The pelves are only mildly nondilated.  The ureters follow the normal anatomic course into the bladder, which is devoid of urine due to Foley catheterization.  The prostate is grossly unremarkable.

**EXHIBIT** _____ *C*



**Medina Memorial Health Care System**
**Medina, New York 14103**

**History and Physical**

**Patient Name: MARCINIAK HOMER E**
**Medical Record #: 014337**
**Account #: 10165301**
**Date of Birth:** ███████
**Room #: Intensive Care Unit**
**Attending Physician: David Stahl, MD**

**Admission Date:** July 5, 2010

**Reason for Admission:** This is a 77-year-old male who was assaulted in his home earlier in the day and beaten on his face. He was in the emergency room and he had to have sutures placed on his upper lip.

He was sent home and, apparently, he developed some chest pain and shortness of breath markedly later on in the morning and he was brought over to the emergency room and was found to be in cardiogenic shock, with a pressure of 80 systolic. He had rales in his chest. His troponin came back elevated, consistent with a myocardial infarction. He had previous severe coronary artery disease and cardiomyopathy based on ischemia with ejection fraction of 20 to 25% on echocardiogram done recently. He is also diabetic.

**Medications:** He has been on Metformin 500 b.i.d., Benazepril 20 mg daily, _____ being 30 mg at h.s. Lipitor 10 q.h.s., metoprolol 25 daily.

Several years ago he had a heart attack and at that time he had had myocardial rupture and had to have bypass surgery and suturing of his ventricle several years ago. He also has a history of diabetes and previously he had hypertension. He has been getting short of breath quite a bit recently, coming to the office when the ejection fraction was noted.

He currently is minimally responsive on a ventilator. Blood pressure is 64/40. Heart rate sinus rhythm. He does have a palpable pulse, although his systolic pressure is low. Abdomen is soft, no tenderness. He has no edema. Cool extremities from the Dopamine.

**Laboratory/Diagnostic Data:** His EKG shows Q-S anteriorly. There does not appear to be any acute changes seen with it, although the Troponin is elevated. INR is 1.3. hemoglobin is 14.1, with 8,800 white count. BUN is 20, creatinine 1.18. Sugar was 196 on a random specimen. Liver enzymes were normal. Magnesium is normal. BNP was 603. Troponin was 6.92. D-dimer was 435.

**Assessment:** He is being admitted to the hospital in critical condition. We had originally tried to transfer him to Buffalo for emergency angiography after cardiogenic shock although, at this point, with him being unresponsive and in very poor condition, he likely would not survive the transport.

**History and Physical**



**Medina Memorial Health Care System**
**Medina, New York 14103**

**History and Physical**

**Patient Name: MARCINIAK HOMER E**
**Medical Record #: 014337**
**Account #: 10165301**
**Date of Birth:** ████████
**Room #: Intensive Care Unit**
**Attending Physician: David Stahl, MD**

I have discussed this with the family at length. His sister is making the decisions. We will not treat any arrhythmias. We will keep him in the Intensive Care Unit on a Dopamine/Dobutamine drip and ventilatory support, but the outlook is very dismal. His diagnosis on admission is acute myocardial infarction with cardiogenic shock, Stage IV heart failure.

DS:sma
D: 7/5 - - T: 7/5/10
#42445-613

_____
David Stahl, MD

**EXHIBIT** D



**Monroe County**
**Office of the Medical Examiner**
**Rochester, New York**

**Report of Investigation**
**Other County Case**

## CALL INFO

| NAME OF DECEASED (LAST, FIRST MIDDLE) | COUNTY/ORIGIN | CASE NUMBER |
|---|---|---|
| **Marciniak, Homer E.** | **Orleans Co.** | **10-01486** |

| INVESTIGATOR | REPORTED BY | REPORTING AGENCY | REFERENCE NUMBER |
|---|---|---|---|
| Patrick Belmonte | Scott Schmidt | Orleans County Coroner | |

| CALL DATE AND TIME | DISPATCH DATE AND TIME | ARRIVAL DATE AND TIME | DEPART DATE AND TIME |
|---|---|---|---|
| 07/05/2010 18:15 | | | |

## DECEDENT

| LAST SEEN | DATE OF BIRTH | AGE | GENDER | RACE | HISPANIC? |
|---|---|---|---|---|---|
| 7/5/2010 2:24:00 PM | ▓▓▓ | 77 Years | Male | White | ☐ Yes ☑ No |

| RESIDENCE (STREET, CITY, STATE, ZIP) | COUNTY | TELEPHONE NO. |
|---|---|---|
| ▓▓▓▓▓ | Orleans | (585) 798-3768 |

| MARITAL STATUS | SOCIAL SECURITY NUMBER | OCCUPATION | EMPLOYER |
|---|---|---|---|
| Single | ▓▓▓▓ | | Retired |

| REGULAR PHYSICIAN (PRIMARY MEDICAL DOCTOR) | | |
|---|---|---|
| David Stahl, MD | ▓▓▓▓, Middleport, NY 14105 (716) 735-7774 | |

## DEATH

| LOCATION OF DEATH |
|---|
| Medina Memorial Hospital - Hospital - ED |

| ADDRESS (STREET, CITY, STATE, ZIP) | COUNTY |
|---|---|
| 200 Ohio Street , Medina NY 14103 | Orleans |

| PRONOUNCED BY | AGENCY | PRONOUNCED DATE AND TIME |
|---|---|---|
| Pasquale Baranello, MD | Medina Memorial Hospital | 07/05/2010 14:24 |

## INCIDENT

| LOCATION OF INCIDENT | AT WORK |
|---|---|
| Private Residence | ☐ |

| ADDRESS (STREET, CITY, STATE, ZIP) | COUNTY | INCIDENT DATE |
|---|---|---|
| ▓▓▓▓ Medina New York 14103 | Orleans | 7/5/2010 |

| INVESTIGATING AGENCY | CR # | OFFICERS |
|---|---|---|
| Medina Police Department | 10-12821 | Chief Jose Avila |

CIRCUMSTANCES OF DEATH

Orleans Co case concerning the death of a 77-year-old white male. The subject was the victim of a home invasion/ burglary/ assault on 7/5/10. He sustained injuries and was taken to Medina Memorial then released later that day. He went back in at 1100 hours for SOB. His health declined possibly cardiac related. Medina PD investigating. Full post.

| PROPERTY |
|---|
| ☑ Yes    ☐ No |

## NOTIFICATION

| LEGAL NEXT OF KIN | RELATIONSHIP |
|---|---|
| Elizabeth Mielcarek | Sister |

| ADDRESS (STREET, CITY, STATE, ZIP) | TELEPHONE NO. |
|---|---|
| ▓▓▓▓ Medina NY 14103 | (585) 798-1089 |

| NOTIFICATION CONFIRMED BY | METHOD | DATE AND TIME |
|---|---|---|
| Patrick Belmonte | Coroner | 07/05/2010 18:15 |

| IDENTIFIED BY | METHOD | DATE AND TIME |
|---|---|---|
| Scott Schmidt | Visual | 07/05/2010 19:55 |

## DISPOSITION

| TRANSPORTED TO MEO BY | FUNERAL HOME | FUNERAL HOME TELEPHONE NO |
|---|---|---|
| Bates and Tuttle Funeral Home | Cooper | (585) 798-4131 |

| CERTIFICATE ISSUED BY | MANNER OF DEATH | TYPE OF EXAM |
|---|---|---|
| Scott F. LaPoint, MD | Undetermined | |

| CAUSE OF DEATH | PART II (OTHER SIGNIFICANT CONDITIONS) |
|---|---|
| Acute myocardial infarction | |
| DUE TO OR AS A CONSEQUENCE OF | |
| 2. | |
| DUE TO OR AS A CONSEQUENCE OF | |
| 3. | |

| PUBLIC ADMINISTRATOR'S CASE? | RESIDENCE STATUS? | KEYS HELD AT MEO? | PUBLIC ADMINISTRATOR NOTIFIED? |
|---|---|---|---|
| ☐ Yes  ☑ No | | ☐ Yes  ☑ No | ☐ Yes  ☑ No |

**EXHIBIT** _E_

**Office of the Medical Examiner**
**Monroe County**
**New York**



**CASE NARRATIVE**
REPORT
**Case Number**: 10-01486
**Investigator**: Patrick Belmonte
**Call Date/Time**: 7/5/2010 6:15:00 PM
Other County Case
**County/Origin**: Orleans Co.

**Name:** Homer E. Marciniak
**Residence:** ████████████ Medina New York 14103

**Date of Birth:** ███████

## SUMMARY OF INVESTIGATION

Scott Schmidt, Orleans County Coroner, contacted this office concerning the death of a 77-year-old white male. According to Coroner Schmidt, the subject resided alone in a home located at 106 Mead Avenue Medina, NY 14103. In the early morning hours of 07/05/10 at approximately 0400 hours the subject was the victim of a home invasion/ burglary/ assault. An unknown number of suspects broke into the subject's home and attacked him. The suspect(s) also made off with two or possibly three handguns owned by the subject as well as approximately $4,000.00 in cash. After the assault the subject went to a neighbor's house for help. The neighbor, reported to be the wife of Sergeant Todd Draper of the Medina Police Department (MPD), contacted 911 and EMS units as well as the MPD arrived on scene. The subject was taken to Medina Memorial Hospital-Emergency Department (MMH-ED), via ambulance, where he was diagnosed with a laceration of the lip and had sustained several "bumps" to the head as a result of the attack. The subject remained at MMH-ED until later that morning when he was released and sent home. The subject returned to his home with his sister and was able to speak with MPD for a brief period. At approximately 1100 hours on 07/05/10 the subject became short of breath and 911 was once again summoned to the home. The subject was once again transported to MMH-ED, via ambulance, where he was treated and monitored. While at MMH-ED the subject's condition declined and he may have suffered a cardiac related episode which resulted in him losing vital signs. ALS protocols were put into place but despite all efforts to the contrary, the attending ED physician at MMH, Pasquale Baranello, MD, pronounced the subject on 07/05/10 at 1424 hours. Coroner Schmidt and MPD were then contacted a short time later.

Coroner Schmidt reported this death is being treated as a homicide and once at MMH he did take buccal swabs and fingerprinted the subject in the presence of MPD. The subject was then placed into a body pouch for transport to this office and the pouch was sealed. Coroner Schmidt reported he was sending to this office, in addition to the subject's body, the following items: The subject's MMH-ED chart for both visits on 07/05/10 (including PCR's), the MPD police report for the initial incident, the authorization for autopsy, the identification sheet, and a death certificate. This Investigator requested Coroner Schmidt also obtain the admission specimens from the subject's initial admission to MMH-ED on the morning of 07/05/10 and include those in the materials he was sending here. Coroner Schmidt reported he would check into that and include them if any were available. Due to the circumstances of the death, Coroner Schmidt was requesting a full post mortem examination be performed.

In an effort to learn additional information regarding the subject's death this Investigator contacted Chief Jose Avila of the MPD on the evening of 07/05/10. Chief Avila provided the following additional information: The subject was apparently a comic book collector and had a collection of comic books dating back several decades. Chief Avila estimated the subject's comic book collection was about 400 comic books and worth approximately $40,000.00. The subject had been selling some of the comic books, some he sold very recently to unidentified people from Rochester. The collection, along with cash and three of the subject's handguns were stolen from the subject's home indicating the suspect(s) may have known the subject and may have known the value of the comic book collection he had. Chief Avila is still investigating this incident along with the New York State Police (NYSP). Chief Avila requested he be contacted two hours prior to the post mortem examination so that either he or a representative of law enforcement could be present for the exam.

The subject and all the previously mentioned items arrived at this office on the evening of 07/05/10 at 1950 hours, via the Bates and Tuttle Funeral Home. Of note were the specimens which appeared to have been drawn well after the subject's initial admission. The subject was viewed lying supine enclosed in a white body pouch. The body pouch was sealed with

**Signature:** 

Patrick Belmonte

**Office of the Medical Examiner**
**Monroe County**
**New York**



**CASE NARRATIVE**
REPORT
**Case Number**: 10-01486
**Investigator**: Patrick Belmonte
**Call Date/Time**: 7/5/2010 6:15:00 PM
Other County Case
**County/Origin**: Orleans Co.

seal #7496234. The bag was tagged and placed in the body cooler. Body processing was deferred due to the circumstances of the case.

Limited medical history was obtained from Coroner Schmidt and included the following: The subject did have cardiac disease and a scar, presumably from open heart surgery, was present on his chest. The subject's PCP was identified as David Stahl, MD. A follow-up was entered to contact Dr. Stahl at a later time to obtain a copy of the subject's complete problem list and medication list.

At the time of this report the subject's next of kin has been identified as his sister, Elizabeth Mielcarek. Mrs. Mielcarek has been notified of the subject's death but has not yet chosen a funeral home to handle the necessary arrangements. Additional information will be added as it becomes available.

Signature: _____
Patrick Belmonte

**CASE ADDENDUM**

**Case Notes Summary**

**Monroe County**
**Office of the Medical Examiner**
**Rochester, New York**



**Case Number:** 10-01486
**Investigator:** Patrick Belmonte
**Call Date/Time:** 07/05/2010 18:15
Other County Case
**County/Origin:** Orleans

**Name:** Homer E. Marciniak

| Date-Time/Entry Made By | Classification/Comments |
|---|---|
| 07/06/2010 9:36<br>Amy Steward | **Coroner Contacts**<br>Scott Schmidt called the office to report that the blood that was sent up with subject yesterday, was from his second admission from Medina Hospital, at aprox. 11am on 7/5/2010. |
| 07/06/2010 9:39<br>Amy Steward | **Followup Requests/Actions Taken**<br>LATE ENTRY: AT Wilson contacted Chief Avila prior to post. |
| 07/06/2010 15:19<br>Nicholas J. Basile | **Criminal History/Law Enforcement Contacts**<br>This office is contacted by Chief Jose Avila of the Medina Police Department inquiring about the findings of the autopsy. This Forensic Attendant consulted with Deputy Medical Examiner Scott F. LaPoint, MD. It was determined that Dr. LaPoint would contact Chief Avila once the autopsy has been completed. While consulting with Dr. LaPoint, Autopsy Technician Nicole Holmes stated that the evidence was ready to be released regarding this case. This Forensic Attendant obtained a phone number from Chief Avila and informed him that the evidence is ready to be released. Chief Jose Avila- Cell- 585-590-2183. |
| 07/06/2010 15:35<br>Scott F. Lapoint, MD | **Coroner Contacts**<br>At the following date and time (7/6/2010 15:35) , Scott Schmidt was contacted and advised of the autopsy findings by Scott F. LaPoint, MD. |
| 07/06/2010 15:56<br>Scott F. Lapoint, MD | **Criminal History/Law Enforcement Contacts**<br>Called Chief Avila and advised him of the autopsy findings. I explained the temporal changes that occur with an MI and indicated that it would be unlikely that I could clearly link his MI to the assault. I noted that I would pend the case and wait and see what the micros showed. He was very appreciative of the phone call. I invited him to call me with any further questions or information. |
| 07/07/2010 10:41<br>Dean Franklin | **Followup Requests/Actions Taken**<br>This Inv. consulted with Dr. LaPoint, and he determined that this case will not be ruled a homocide as listed on the DC, and a 2nd ID is not needed. |
| 07/08/2010 7:55<br>Amy Steward | **Criminal History/Law Enforcement Contacts**<br>Jose (Medina PD) calls the office to see if there is evidence ready for release, I inform him that there is. Jose will be sending Officer Todd Draper to this office in the next few hours to retrieve this evidence. Jose also asks if he would be able to obtain a preliminary autopsy report if possible and I advise him that I will speak with our case manager Julie when she comes in later this morning. |
| 07/08/2010 9:58<br>Julie Luedke | **Criminal History/Law Enforcement Contacts**<br>Sgt. Draper picks up death confirmation while here gathering evidence. He speaks with both Drs. Dignan and LaPoint and will be following up with any available information with ambulance run |
| 07/08/2010 10:43<br>Dean Franklin | **Criminal History/Law Enforcement Contacts**<br>This Inv. received a copy of the amended CR 201002345 from Medina PD via JAL. The report was stamped, labeled and placed in the case file. |
| 07/08/2010 14:08<br>Amy Steward | **Followup Requests/Actions Taken**<br>This FA contacted subjects PCP and requested a copy of his problem and medication lists. I am told that this will be faxed over shortly. |

**Monroe County**
**Office of the Medical Examiner**
**Rochester, New York**



**CASE ADDENDUM**

**Case Notes Summary**
**Case Number:** 10-01486
**Investigator:** Patrick Belmonte
**Call Date/Time:** 07/05/2010 18:15
Other County Case
**County/Origin:** Orleans

**Name:** Homer E. Marciniak

| Date-Time/Entry Made By | Classification/Comments |
|---|---|
| 07/08/2010 14:17<br>Amy Steward | **Medical Information/History**<br><br>A fax is received from subjects PCP containing subjects medical history and medications.<br><br>Medical history includes - Prior MI, high cholesterol, HTN, myocardial rupture, Coronary Bypass Surgery (1995), Diabetes, Cardiomyopathy and shortness of breath.<br><br>Medications include - Lantus, Lotensin, Simvistatin, Metformin and Lipitor.<br><br>Fax is stamped, labeled and placed into the case file. |
| 07/19/2010 11:34<br>Julie Luedke | **Medical Information/History**<br><br>Medina Memorial calls for information on COD - provided pending and to call again in 3 months for verbal update |
| 07/23/2010 13:07<br>Julie Luedke | **Funeral Home Interactions**<br><br>return call to funeral director Tim Cooper, Cooper, FH at 768-4131 - left my name and number |
| 07/26/2010 8:44<br>Julie Luedke | **Funeral Home Interactions**<br><br>return call to funeral director Tim Cooper, Cooper, FH at 768-4131 - sister cant get life insurance due to pending status - explained time frame and process. |
| 08/03/2010 11:57<br>Julie Luedke | **Criminal History/Law Enforcement Contacts**<br><br>return call to Chief Avila, 798-5602 - leave my name and number |
| 08/04/2010 9:25<br>Julie Luedke | **Criminal History/Law Enforcement Contacts**<br><br>Chief Avila calls me - he states sister needs death cert to close out estate, etc. He tells me he cleared family of any wrong doing in this case. I explain we have pending tests and explain the time frame associated with an updated death cert. I offer to speak with insurance company |
| 11/03/2010 15:31<br>Julie Luedke | **Criminal History/Law Enforcement Contacts**<br><br>prepared GJ package for Joe Cardone, Orleans County per his request and emailed it to him. |
| 11/09/2010 12:42<br>Scott F. Lapoint, MD | **Criminal History/Law Enforcement Contacts**<br><br>This case was reviewed at the office review meeting at 10:00 am this morning. Dr. Dignan, Dr. Gosink and Dr. Beno were all present, along with other staff members. There was discussion of all aspects of the case, and the published NAME guidelines were reviewed. There was unanimous agreement among all present that the appropriate manner of death is natural given the long time frame between the assault and his death, during which he had returned to his usual baseline state. He has severe underlying heart disease, and had had increasing symptoms in the prior days. There was no evidence that infarct had occurred earlier, during the assault. |

**EXHIBIT** F

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

**Case No. 10-CR-360-A**

-*vs*-

RICO J. VENDETTI, *et al.*

*Defendant.*

## ORDER FOR RULE 17(C) SUBPOENAS

    Upon the application of Matthew R. Lembke, Esq., counsel for the Defendant, Rico J. Vendetti, for an Order, pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, directing the issuance of subpoenas *duces tecum* for David Stahl, M.D., 21 North Main Street, Middleport, NY 14105, to produce medical records of Homer Marciniak [dob ███████ 1933] and the Court having read and considered the application and good cause appearing therein; it is

    **ORDERED,** that the Defendant's application be and hereby is granted, and the Clerk is directed to issue such subpoenas *duces tecum* directed to David Stahl, M.D. 21 North Main Street, Middleport, NY 14105 and to produce all medical records relating to Homer Marciniak [dob ██████ 1933], and it is further

    **ORDERED**, Vendetti shall be responsible for costs associated with service of process including any witness fees; and it is further

**ORDERED**, that such records shall be delivered to the Hon. Jeremiah J. McCarthy at 2 Niagara Street, Buffalo, New York 14202 so that they are received on or before June 26, 2012.

Dated:  Buffalo, New York, June _____, 2012

_____

HONORABLE JEREMIAH J. McCARTHY
United States Magistrate Judge